## IN THE CIRCUIT COURT OF DESOTO COUNTY, MISSISSIPPI

**MICHAEL MURCHISON**                                                                   **PLAINTIFF**

VS.                                                                            **CAUSE NO:** CV2015-036GCD

**TITLEMAX OF TENNESSEE, INC.**
**a/k/a TITLE MAX #1 OF MEMPHIS, INC; and**
**TMX FINANCE OF TENNESSEE, INC.**                             **DEFENDANT**

### COMPLAINT

COMES NOW the Plaintiff, MICHAEL MURCHISON, by and through the undersigned counsel of record, and files this suit against the above named Defendants and for cause states the following, to-wit:

### I. PARTIES:

1. Plaintiff, MICHAEL MURCHISON (hereinafter referred to as "Plaintiff") is an adult resident citizen of Desoto County, residing in Southaven, Mississippi.

2. Defendant TITLEMAX OF TENNESSEE, INC. a/k/a TITLE MAX #1 OF MEMPHIS, INC. (hereinafter referred to as "Titlemax") is a Tennessee corporation with its principal business address located at 15 Bull St., Ste. 200, Savannah, GA 31401. Titlemax was operating the store located at 4440 Elvis Presley, Memphis, Tennessee.

3. Defendant TMX FINANCE OF TENNESSEE, INC. (hereinafter referred to as "Titlemax Finance") is a Delaware corporation with its principal business address located at 15 Bull St., Ste. 200, Savannah, GA 31401.

1



FILED
FEB 27 2015
Circuit Court Clerk, Desoto County, MS

## II. FACTS:

4.     This complaint arises out of the unlawful repossession and sale of Plaintiff's 2004 Chevrolet Silverado 1500, along with personal property stored inside.

5.     On or about September 4, 2014, Plaintiff's son, John Michael Murchison (hereinafter "John") unlawfully took the title to Plaintiff's vehicle without Plaintiff's knowledge or consent and pledged Plaintiff's truck as collateral for a two (2) loans with Titlemax located on Elvis Presley Blvd in Memphis, Tennessee.

6.     Sometime around the first week of October 2014, Plaintiff returned to his home in Southaven, Mississippi to find a notice on the front door of his home from TitleMax demanding payment on the title loans obtained by John and secured by Plaintiff's vehicle.

7.     Plaintiff immediately called the number on the notice and spoke with "Doug", an employee of TitleMax, to inquire as to the meaning of the notice. Doug informed Plaintiff that he needed to pay off the cash advance loans immediately or his vehicle would be repossessed.

8.     Plaintiff explained to Doug that he was sole owner listed on the title to truck, that he had never pledged his truck as collateral, and that he did not have the money to pay the loans. During this conversation, Doug insisted to Plaintiff that even though John did not have legal title to the vehicle and even though Plaintiff did not personally authorize the title loans, Title Max had a "legal right" to Plaintiff's vehicle because John's middle name was the same as Plaintiff's first name—the name on the title to Plaintiff's truck.

9.     Over the next several weeks, TitleMax employees continued to call Plaintiff to demand that he repay the loans obtained by John, all the while threatening repossession of Plaintiff's vehicle if he did not make payment on the loans. Each time, Plaintiff explained that he did not authorize these loans and that his son, John, did not have any ownership interest in the

2

vehicle. Plaintiff further explained to TitleMax employees that John was currently incarcerated for similar crimes.

10. On or about November 20, 2014, during the early morning hours, a towing service arrived at Plaintiff's home and pulled into his driveway. Plaintiff confronted the driver of the tow truck and told him that the repossession was unlawful, that he had never taken out a title loan on the vehicle, and further insisted that they cease and desist efforts to tow his vehicle until the police arrived. The driver of the tow truck told Plaintiff that he would have to "take it up with his son (John)", but that he was there on behalf of TitleMax to take the vehicle.

11. While Plaintiff was calling the police department, the driver of the tow truck hurriedly hooked up Plaintiff's truck and sped off from Plaintiff's residence with the truck in tow.

12. Plaintiff called TitleMax in Memphis and spoke with Ronald, an individual claiming to be manager of that location. Plaintiff again explained the situation, including the fact that Plaintiff never authorized these title loans, that Plaintiff was the only person listed on the title to the vehicle, and that he still had personal items (wallet with driver's license and credit cards, checkbook, work clothes, and tools) inside of the vehicle that he desperately needed to be returned.

13. Despite numerous requests that TitleMax return his vehicle, or at the least allow him to retrieve his personal items from the vehicle, Ronald refused his request and further refused to provide information regarding the location of his vehicle—instead telling Plaintiff that he would have to "take it up with TitleMax legal department". To make matters worse, Ronald refused to provide information on how to contact the legal department, stating only that he would inform them of the situation and they would be in contact.

3

14. On November 24, 2014, written request was made upon TitleMax (through counsel) to return the vehicle and its contents, as well as written request to refrain from disposing of Plaintiff's vehicle until such time as Plaintiff was provided written notice of TitleMax's intention to do so. Plaintiff further requested that TitleMax legal department respond to Plaintiff's request for action.

15. On December 2, 2014, after receiving no response from TitleMax, Plaintiff (through counsel) again requested in writing that TitleMax legal department respond to Plaintiff's request for return of his vehicle (with the contents of the vehicle) and further confirmed in writing the agreement that Plaintiff's vehicle would not be sold, transferred, or relocated without providing prior notice to Plaintiff.

16. On December 19, 2014, TitleMax legal department made its first contact with counsel for Plaintiff and requested that Plaintiff meet a representative from the Memphis TitleMax to unlock the console of Plaintiff's vehicle to purportedly return the contents of the vehicle to Plaintiff.

17. On December 23, 2014, TitleMax legal department informed Plaintiff that the personal items located inside of Plaintiff's vehicle could be retrieved at the TitleMax in Memphis, but that Plaintiff's vehicle would not be returned, as it had already been sold.

18. Upon information and belief, TitleMax sold Plaintiff's vehicle to Bob's Auto Sales of Baldwyn, MS at the Dealer's Auto Auction of the South, LLC in Horn Lake, Mississippi on December 19, 2014 for $4,350.00.

19. Plaintiff was never provided prior notice of this sale, and to date, Title Max has unlawfully held the sale proceeds despite written request for same.

4

## COUNT ONE

## CONVERSION

20. Plaintiff adopts and realleges the allegations contained in Paragraphs 1-20 as if fully set out herein.

21. On or about November 20, 2014, Defendants unlawfully took and converted to their own use, and eventually sold Plaintiff's 2004 Chevrolet Silverado K1500, along with Plaintiff's personal items and work tools stored inside of Plaintiff's vehicle.

22. The approximate value of the property hereinabove described was $15,500.00.

23. Prior to Defendants' unlawful conversion of Plaintiff's vehicle, Plaintiff used the vehicle in his business of home remodeling/repair. Plaintiff has been without the use of his vehicle since it was unlawfully repossessed from his home on November 20, 2014. As a result, he has suffered a substantial wage loss and/or loss of wage earning capacity due to his lack of access to work tools and his vehicle.

**WHEREFORE, THE PREMISES CONSIDERED**, Plaintiff demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined by struck jury, plus interest and costs of this action, for the unlawful conversion and sale of Plaintiff's vehicle and personal property.

RESPECTFULLY SUBMITTED, this the 25th day of February, 2015.

_____
Philip A. Stroud (MSBN 99401)
ATTORNEY FOR PLAINTIFF

5

OF COUNSEL:

THE STROUD LAW FIRM, P.C.
5779 Getwell Rd, Bldg. C, Ste.1
Southaven, MS 38672
(662) 536-5656


PLAINTIFF, BY AND THROUGH HIS ATTORNEY, PURSUANT TO MISSISSIPPI RULE OF CIVIL PROCEDURE 38, RESPECTFULLY REQUESTS A TRIAL BY STRUCK JURY ON ALL CLAIMS AND ISSUES PRESENTED HEREIN AS ALLOWED BY MISSISSIPPI LAW.

_____
PHILIP A. STROUD